George **CUTSHALL**, Petitioner,

v.

Lewis **TOLLETT**, etc., **Respondent.**

Civ. A. No. 2528.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Oct. 2, 1970.

Gerald R. Johnson (appointed), Johnson City, Tenn., for petitioner.

Charles W. Cherry, Bart Durham, Asst. Attys. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM OPINION

NEESE, District Judge.

The federal writ of habeas corpus was awarded herein, 28 U.S.C. § 2243, on the concession of counsel for the respondent that there had been a breakdown in the corrective processes of Tennessee in the handling of the petitioner's application for relief by state habeas corpus or statutory post-conviction procedures in the Criminal Court of Washington County, Tennessee, 28 U.S.C. § 2254(b). At the initial evidentiary hearing of July 8, 1970 herein, this proceeding was contin-ued until the pertinent court records could be provided and a fuller evidentiary hearing conducted. Such fuller hearing was conducted on September 23, 1970.

From the files and records exhibited by the respondent in State of Tennessee v. George Cutshall, no. 7632, Criminal Court of Washington County, Tennessee, it appears that Mr. Cutshall was convicted after a jury trial of the violent robbery of Mr. Edgar McKee. Mr. McKee testified that Mr. Cutshall was the person who robbed and beat him at his (Mr. McKee's) home in the Conklin community of Washington County, Tennessee on January 7, 1966. Mr. McKee was then 82 years of age and stated that he had seen Mr. Cutshall at the McKee residence "* * * a time or two * * *", and that Mr. Cutshall had married the daughter of the wife of Mr. Gene Shelton, a tenant on the McKee farm. He testified that Mr. Cutshall was accompanied by another person on this occasion.

Mr. McKee was approximative about the time of the robbery. He stated he was robbed and beaten "* * * right after dinner [sic: lunch] sometime * * *", on January 7, 1966. Mr. Theodore McKee, the son of the victim, testified that he had seen his father "* * * around 11:00 * * *" o'clock, a. m. that morning; that he declined his father's invitation to lunch, because he (the younger Mr. McKee) had arranged for his wife to come and take him to their home some two miles away for lunch; that Messrs. Shelton and Cutshall and a juvenile, Mr. Tommy Lamb, were nearby when he had this conversation with his father; that his wife came for him "* * * about one o'clock * * *", p. m.; that he returned from lunch "* * * in about 40 minutes * * *" and after he had resumed working for "* * * about 30 minutes * * *", Mr. Shelton looked out the window and said, "there's the damned 'law.'" The younger Mr. McKee, who expressed his suspicion of Mr. Shelton's possible complicity in the crime,

stated that law officers then advised him and Mr. Shelton that a telephone call had come for him (Mr. McKee) to come to his father's house, "* * * that he'd been beat-up and robbed * * *". Mr. Shelton had departed the community by the time of the trial on January 28, 1966.

Evidence was presented on the second evidentiary hearing that three witnesses were available on that date who would have testified that Mr. Cutshall was present as a witness on the date of the robbery at the preliminary examination in the case of State of Tennessee v. Herbert Hensley, no. J–8673, in the Court of General Sessions of Washington County, Tennessee, at Jonesboro. Mr. Hensley stated this examination was in progress somewhere between 1:00–1:45 o'clock p. m. on that date. His brother, Mr. Lucky Hensley, who was also present at the examination, thought it commenced "* * * around one o'clock * * *" and lasted only a few minutes. The latter's wife, Mrs. Esther Hensley, testified that the examination was conducted in her presence from about one to two o'clock. All three of these witnesses testified they were available for service upon them of subpoenas to testify at Mr. Cutshall's trial on January 28, 1966 and prepared to testify, as stated hereinabove, in corroboration of Mr. Cutshall's alibi that, at the time and place where the elder Mr. McKee was robbed and beaten, he was eight miles removed in court at Jonesboro.

Mr. Cutshall did not testify, as was his right, at his trial. He stated that he asked his court-appointed attorney, the late Frank Hawkins, Esq., about the advisability of taking the stand, and that Mr. Hawkins advised that "* * * it wouldn't do no [sic] good, because you're done [sic] convicted. * * *" Mr. Cutshall claims that he advised Mr. Hawkins of the availability as witnesses of the aforenamed Hensleys, that each of them would testify in support of his alibi, and that he advised Mr. Hawkins also that Mr. Kenneth Foster would testify [1] that he had paid Mr. Cutshall by check $150 for labor shortly before January 7, 1966. None of these four witnesses were subpoenaed, and none testified. Mr. Cutshall testified that he was ignorant of his rights and unacquainted with the course of proceedings in criminal cases,[2] that he did not know of Mr. Hawkins' death[3] until soon before the second evidentiary hearing herein, and that he first became advised of his rights in this regard when interviewed by a "writ-writer" in prison. Mr. Cutshall makes other allegations respecting his claim that Mr. Hawkins' representation of him was ineffective, which Mr. Hawkins is not here to answer, and which are unnecessary to a decision on his application for relief.

The damaging testimony against Mr. Cutshall was that of Mr. Tom Tipton, who was then the chief deputy sheriff of Washington County, Tennessee and investigated this crime. Mr. Tipton testified that Mr. Cutshall showed the officer in the early hours of the next morning after the robbery where Mr. McKee's billfold, taken in the robbery, was located in a barn, some one-half mile from the elder McKee's residence. Mr. Tipton testified in this Court, but not before the jury in the criminal trial, that Mr. Cutshall told him that he (Mr. Cutshall) had thrown the pistol taken from the McKee residence into the Nolichucky river. He testified before both such courts that he found $44.61 in cash on the person of Mr. Cutshall after the latter's arrest.

It appears to this Court that Mr. Cutshall's alibi witnesses should have been called as witnesses and to testify on his

1. Mr. Foster testified herein that he was available on January 28, 1966 and would have so testified, although he could not find his cancelled check at this late date.

2. Mr. Cutshall was 18 years of age at the time of this offense.

3. From 1968 until his death the following year, Mr. Hawkins served as judge of the Court of General Sessions of Washington County, Tennessee.

criminal trial. It is begging the issue to try to decide whether Mr. Cutshall advised his court-appointed attorney of the availability and materiality of these witnesses, or whether he is lying in his testimony before this Court. It does not appear that, except for the judgment under which he is presently in custody, he has ever been convicted of a felony, or that he is otherwise not entitled to full credibility as a witness. The fact remains that he had a. federal right "* * * to have compulsory process for obtaining Witnesses in his favor * * *", Constitution, Sixth Amendment, at his trial. He was accorded neither such process nor the benefit of witnesses in his behalf. Thus, this Court finds and concludes that an error of federal constitutional proportions occurred in Mr. Cutshall's state trial of January 28, 1966. *Cf.* Tompsett v. State of Ohio, C.C.A. 6th (1945), 146 F.2d 95, 98[3], certiorari denied (1945), 324 U.S. 869, 65 S.Ct. 916, 89 L.Ed. 1424.

The remaining question is whether this error may be deemed harmless, in the light of the persuasive evidence of Mr. Cutshall's guilt of the crime of which he stands convicted by a jury. "* * * [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * *" Chapman v. California (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–711[7].

This Court cannot from this entire record declare such a belief. While there appears little in the record of Mr. Cutshall's trial in the state court to raise a reasonable doubt as to his guilt, such cannot be said to be true, if the jury had had before them in addition, the testimony of Mrs. Hensley, the Messrs. Hensley and Mr. Foster. Had

*one juror* found himself reasonably doubtful of Mr. Cutshall's guilt, after having heard all the pertinent testimony, there could have been no conviction. In short, if Mr. Cutshall had been given compulsory process for the attendance of his available alibi witnesses and Mr. Foster, and had each of them testified as they did on the hearing herein, it could not reasonably be concluded that twelve reasonable minds would have come to the same conclusion and found Mr. Cutshall guilty as charged.

Judgment will enter, Rule 58, Federal Rules of Civil Procedure, that the respondent Mr. Tollett, and any person succeeding him in the custody of Mr. Cutshall, release and discharge him under the indictment of the grand jury of Washington County, Tennessee at its January term, 1966, charging Mr. Cutshall with the violent robbery of Edgar McKee on or about January 7, 1966, unless Mr. Cutshall has been retried and reconvicted within 180 days herefrom. The respondent will redeliver custody of Mr. Cutshall to the sheriff of Washington County, Tennessee forthwith for purposes of retrial, unless the district attorney general for the first judicial circuit of Tennessee elects before such retrial not to retry Mr. Cutshall on the said charge.

The Court is deeply appreciative and commendatory of the services to the Court and Mr. Cutshall herein of G. Richard Johnson, Esq., who accepted this Court's request that he represent Mr. Cutshall as a person unable to provide his own counsel. 28 U.S.C. § 1915(e). The presentation by Mr. Johnson reflected intense and comprehensive preparation. It is difficult to conceive that Mr. Cutshall could have had any better representation herein, the outcome hereof notwithstanding.